# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2506

_____

Atif F. Bhatti; Tyler D. Whitney; Michael F. Carmody

*Plaintiffs - Appellants*

v.

Federal Housing Finance Agency; Department of the Treasury; Sandra L. Thompson

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: September 23, 2021
Filed: October 6, 2021

_____

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Three shareholders in the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") challenge the structure of the regulatory agency overseeing them, the Federal Housing Finance Agency ("FHFA"). The shareholders allege the FHFA's leadership structure and appointments violate the Appointments Clause, the separation of powers, and the nondelegation doctrine. They allege Congress

unlawfully delegated authority to the FHFA under the Housing and Economic Recovery Act, 12 U.S.C. § 4617.  The district court dismissed for lack of standing, alternatively dismissing on the merits.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, and reverses and remands in part.

## I.

In August 2009, the original FHFA director resigned.  President Obama replaced him with Acting Director Edward J. DeMarco, under 12 U.S.C. § 4512(f). The President nominated a new director, but the nomination stalled. During DeMarco's four years and four months as Acting Director, the FHFA and Treasury Department entered into a third amendment to the agreement governing shareholders, the Preferred Stock Purchase Agreements.  The Acting Director signed the amendment for the FHFA, acting as conservator for Freddie Mac and Fannie Mae.  Their shareholders allege that one provision of the plan—the Net Worth Sweep—would collapse the value of their holdings.

The shareholders sued the FHFA alleging the third amendment violated three Constitutional doctrines:  the Appointments Clause, separation of powers, and the nondelegation doctrine.  The district court dismissed.

While this case was pending, the Supreme Court granted certiorari in a nearly identical case, ***Collins v. Mnuchin***, 938 F.3d 553, 586 (5th Cir. 2019) (en banc), *cert. granted,* 141 S. Ct. 193 (2020) (mem op.).   The Court recently issued its opinion in ***Collins v. Yellen***, 141 S. Ct. 1761 (2021), which resolves most of the issues here.

## II.

The shareholders argue the district court improperly dismissed for lack of standing.

-2-

The Supreme Court agrees.  "To establish Article III standing, a plaintiff must show that it has suffered an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'"  *Collins*, 141 S. Ct. at 1779, *quoting* **Lujan v. Defs. of Wildlife**, 504 U.S. 555, 560-61 (1992).  "[T]he relevant action in this case is the third amendment, and because the shareholders' concrete injury flows directly from that amendment, the traceability requirement is satisfied."  *Id.*    The Court rejected arguments that the fourth amendment to the governing agreement mooted retrospective relief—although it does moot *prospective* relief.  *Id.* at 1780.   The Court held that the presence of an Acting Director in the chain of leadership did not prevent the shareholders from tracing their injury to the process for appointing a Director.   *Id.* at 1781.   Finally, the Court rejected FHFA's argument that the Recovery Act's "succession clause," 12 U.S.C. § 4617(b)(2)(A)(i), bars relief.  *Id.* at 1780-81.  Since the parties here are similar and allege the same harms, *Collins* controls.   The shareholders have standing to seek retrospective, but not prospective, relief.

III.

The shareholders argue that the appointment of Acting Director DeMarco was initially valid, but became invalid after two years, which they believe is longer than reasonable under the circumstances.   The district court disagreed.

The *de facto* officer doctrine bars any relief here.   "The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient."    **Ryder v. United States**, 515 U.S. 177, 180 (1995), *citing* **Norton v. Shelby Cty.**, 118 U.S. 425, 440 (1886).  "The *de facto* doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office."  *Id.*, *quoting* 63A **Am. Jur. 2d**, *Public Officers and Employees* § 578, at 1080–81

-3-

(1984).  Although the *de facto* officer doctrine might not apply to an initially defective *appointment*, see *id.* at 182-83, the shareholders concede there was no defect here.

Even if the *de facto* officer doctrine did not control here, the shareholders are not entitled to relief.  Assuming they are correct that the Acting Director overstayed some limit implied in the Appointments Clause, they would not be entitled to any relief based on that fact.  *See* ***Collins***, 141 S. Ct. at 1787-88 (explaining if the director was properly appointed, then "there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office").  Any defect was resolved when the subsequent FHFA directors—none of whose appointments were challenged—ratified the third amendment.  *See **id.*** at 1787 ("[T]here was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void.").  This court affirms.

IV.

The shareholders argue that the FHFA leadership structure impermissibly limits the President's removal authority, violating the separation of powers.

The Supreme Court agrees.  "Congress could not limit the President's power to remove the Director of the Consumer Financial Protection Bureau (CFPB) to instances of 'inefficiency, neglect, or malfeasance.'"  ***Collins***, 141 S. Ct. at 1783, *citing **Selia Law, LLC v. CFPB***, 140 S. Ct. 2183, 2197 (2020).  The Court did not "'revisit our prior decisions allowing certain limitations on the President's removal power,' but we found 'compelling reasons not to extend those precedents to the novel context of an independent agency led by a single Director.'"  ***Id.***, *quoting **Selia Law***, 140 S. Ct. at 2192.  "[T]he Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer."  ***Id.*** at 1787.  "[T]herefore the removal restriction in the Recovery Act violates the separation of powers."  ***Id.***

-4-

Determining the appropriate remedy for this Constitutional harm, however, is less clear. The shareholders request this court vacate the third amendment. But, "the Acting Director who adopted the third amendment was removable at will," defeating the "argument for setting aside the third amendment in its entirety." *Id.* The only question is about remedy "with respect to only the actions that confirmed Directors have taken to *implement* the third amendment during their tenures." *Id.* "All the officers who headed the FHFA during the time in question were properly *appointed*. . . . there was no constitutional defect in the statutorily prescribed method of *appointment* to that office. As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void." *Id.*

Still, the shareholders argue they sustained actual, compensable harm. They request that this court "issue an injunction" putting them "in the position they would be in but for the constitutional violation." In *Collins*, the Court prescribed remand to determine whether the unconstitutional removal restriction caused compensable harm to shareholders. *Id.* at 1788-89. This court also reverses the dismissal of the separation-of-powers claim and remands to the district court to determine if the shareholders suffered "compensable harm" and are entitled to "retrospective relief." *Id.* at 1789.

V.

The shareholders argue that Congress impermissibly delegated authority to the FHFA in the Recovery Act, 12 U.S.C. § 4617. The district court dismissed.

Congress's delegation here meets the low threshold for validation under the nondelegation doctrine. "[S]tatutory delegation is constitutional as long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality op.), *quoting Mistretta v. United States*, 488 U.S. 361, 372 (1989). "The constitutional question is whether Congress has supplied an intelligible principle to guide the delegee's use of

-5-

discretion." *Id.* "The Court has found an intelligible principle, although admittedly broad, even when an act simply stated that an agency should promulgate regulations encouraging the effective use of radio in the 'public interest, convenience, or necessity,' noting that the meaning of 'public interest' was limited in light of the larger aim of the Act." *S. Dakota v. U.S. Dep't of Interior*, 423 F.3d 790, 795 (8th Cir. 2005), *quoting* *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 215–17 (1943).

Congress's delegation of authority directs the FHFA to act as a "conservator," with clear and recognizable instructions. **12 U.S.C. § 4617(a)**. "[T]he Agency is authorized to take control of a regulated entity's assets and operations, conduct business on its behalf, and transfer or sell any of its assets or liabilities." *Collins*, 141 S. Ct. at 1776, *citing* **12 U.S.C. §§ 4617(b)(2)(B)-(C), (G)**. "When the FHFA exercises these powers, its actions must be 'necessary to put the regulated entity in a sound and solvent condition' and must be 'appropriate to carry on the business of the regulated entity and preserve and conserve [its] assets and property.'" *Id.* (alteration in original), *quoting* **12 U.S.C. § 4617(b)(2)(D)**. "Thus, when the FHFA acts as a conservator, its mission is rehabilitation, and to that extent, an FHFA conservatorship is like any other." *Id.* There is one difference: "when the FHFA acts as a conservator, it may aim to rehabilitate the regulated entity in a way that, while not in the best interests of the regulated entity, is beneficial to the Agency and, by extension, the public it serves." *Id.* But this difference clarifies that serving the public is one goal of the FHFA's conservatorship; it does not render the delegation unintelligible. *See id.* (explaining how the FHFA works to rehabilitate housing in the public interest under the statute). In light of the Court's identification of the principles guiding the FHFA, it is clear those principles are intelligible. *See Saxton v. Fed. Hous. Fin. Agency*, 901 F.3d 954, 960 (8th Cir. 2018) (Stras, J., concurring) ("The provision is broad but not boundless."). Congress's delegation in the Recovery Act was permissible. *Id.* at 963 ("Picking among different ways of preserving and conserving assets, deciding whose interests to pursue while doing so, and determining the best way to do so are all choices that the Housing and Economic Recovery Act clearly assigns to the FHFA, not the courts."). This court affirms dismissal of the nondelegation claim.

\* \* \* \* \* \* \*

The judgment is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

_____